UNITED STATES BANKRUPTCY COURT
                      EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| IN RE: | CASE NO. 09-10840 |
| HENRY A. SCHENCK, JR., | SECTION "B" |
|    DEBTOR | CHAPTER 13 |

**************************************************************************

| | |
|---|---|
| MAURO LEIVA, | |
|    PLAINTIFF | |
| VERSUS | ADV.P. NO. 09-1064 |
| HENRY A. SCHENCK, JR., | |
|    DEFENDANT | |


## MEMORANDUM OPINION

This matter came before the court on September 21, 2009 on the motion for summary judgment filed by the plaintiff, Mauro Leiva, **(P-14)** and a motion to dismiss the adversary proceeding filed by the debtor, Henry A. Schenck, Jr. **(P-16)**. The initial complaint in the adversary proceeding sought to determine non-dischargeability of a state court judgment against the debtor. Both motions presented the issue of whether the debtor is entitled to include a non-dischargeable judgment in a chapter 13 plan and to pay it over a 49 month period. For the following reasons, the court finds that the debt is non-dischargeable, and that the debtor can include the judgment in his chapter 13 plan and pay it over a 49 month period. The court also finds that the motion to dismiss is denied.

I.      Background Facts

    1.    The Parties' Relationship

On August 17, 1990, the debtor, Henry A. Schenck, Jr. ("Schenck"), and the plaintiff, Mauro Leiva ("Leiva"), purchased one hundred percent (100%) of the stock in The Optical Center of McKeon and Lopez, Inc. ("McKeon and Lopez") from Dr. Glen Cangelosi for $50,000.00.[1] Leiva and Schenck each owned 50% of the stock and were each officers and directors in McKeon and Lopez, which was a Louisiana corporation.[2]

On June 24, 1996, without Leiva's knowledge or consent, Schenck applied for a $20,000.00 line of credit with Hibernia National Bank ("Hibernia").[3] Schenck forged Leiva's signature on Hibernia's Promissory Note and Commercial Security Agreement for the line of credit.[4] Also on June 24, 1996, without Leiva's knowledge or consent, Schenck applied for a Hibernia Master Card in the name of McKeon and Lopez.[5] Schenck also forged Leiva's signature on the application for the Hibernia Master Card.[6]

Almost ten years later, March 2006, Leiva first learned of the Master Card application when Hibernia deducted $1,399.00 from his personal checking account for a payment on the Master Card account.[7] Leiva contacted Hibernia and then discovered the existence of the line of credit and that his signature had been forged on the Promissory Note, Commercial Security Agreement, and Master Card application.[8] To prevent further damages to his credit

---

[1] Plaintiff's Statement of Undisputed Material Facts, pg.1.
[2] *Id*.
[3] *Id*. at 2.
[4] *Id*.
[5] Plaintiff's Memorandum in Support of Summary Judgment, pg. 2.
[6] *Id*.
[7] Plaintiff's Statement of Undisputed Material Facts, pg.2.
[8] *Id*.

and additional collection actions, Leiva negotiated a settlement with Hibernia in the amount of $10,000.00 and paid that amount as full satisfaction for the indebtedness owed on the line of credit.[9]

On February 16, 2007, Leiva made demand on Schenck to repay $10,000.00 and to provide Leiva with federal and state tax returns for 2001, 2002, 2003, 2004, and 2005 that Schenck was to have filed on behalf of McKeon and Lopez.[10] Schenck did not respond to the demand.[11]

2. Verified Petition of July 17, 2007

On July 17, 2007, Leiva, through counsel, filed a Verified Petition for Damages, Breach of Fiduciary Duties, Injunctive Relief, and Attorney Fees in the 22nd Judicial District for the Parish of St. Tammany, State of Louisiana.[12]

On March 31, 2008, the state court signed a judgment confirming the March 14, 2008 Preliminary Default Judgment entered against Schenck.[13] The judgment awarded $10,000 to Leiva plus attorney fees of $3,500 and the costs of the proceedings of $171.98 plus interest from the date of judicial demand.[14] The judgment was promptly recorded in the mortgage records for the Parish of St. Tammany.[15] In the fall of 2008 and in early 2009, Leiva made efforts to collect on the judgment.[16] These efforts were unsuccessful, and in early 2009,

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 3.
[13] *Mauro Leiva v. Henry A. Schenck, Jr.,* Case No. 2007-13469.
[14] *Id.*
[15] *Id.*.
[16] Plaintiff's Statement of Undisputed Material Facts, pg.4.

Leiva initiated judicial foreclosure proceedings in St. Tammany Parish against Schenck's residence.[17]

In correspondence dated February 9, 2009, Leiva through counsel informed counsel for Schenck that the judgment entered against Schenck was not dischargeable in bankruptcy because of 11 U.S.C. § 523. Nevertheless, Schenck filed a voluntary petition for Chapter 13 bankruptcy protection on March 25, 2009.[18] Schenck's Chapter 13 plan proposes to pay the entire amount of the judgment in favor of Leiva with judicial interest over a 49 month repayment period.[19]

On May 6, 2009, a Meeting of the Creditors was held in Schenck's Chapter 13 Bankruptcy case.[20] Less than 60 days after the Meeting of the Creditors, Leiva filed an objection to the confirmation of Schenck's Chapter 13 plan and also filed the instant adversary complaint to determine non-dischargeability and for attorney fees and costs. On August 10, 2009, counsel for both parties advised the court that there are no disputed facts presented in the adversary, and the court issued its order requiring dispositive motions to be filed by August 25, 2009. The motion for summary judgment was timely filed on August 25, 2009. The motion to dismiss was filed late, on September 1, 2009. On September 21, 2009, oral argument was held.

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 5.
[20] *Id.*

II.      <u>Legal Analysis</u>

The complainant alleges that the debt is non-dischargeable under sections 523(a)(2) and 523(a)(4) of the Bankruptcy Code.[21]

    A.      <u>Section 523(a)(2)(A)</u>

Section 523(a)(2)(A) exempts from discharge a debt:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
> ....
> (2) for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by--
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To succeed under 11 U.S.C. § 523(a)(2)(A), the creditor must prove that: (1) the debtor made a representation; (2) it was knowingly false; (3) it was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on it; and (5) the creditor sustained a loss as a proximate result of the misrepresentation.[22]

    1.  <u>The debtor's representation</u>

A misrepresentation need not be spoken; it can be made through conduct.[23] When Schenck applied for the line of credit and the Hibernia Master Card, he forged Leiva's signature on the application, the promissory note, and the security agreement. Schenck's conduct clearly represented that Leiva consented to the arrangement with Hibernia.

---

[21] 11 U.S.C. §523.
[22] *In re Mercer,* 246 F.3d 391, 403 (5th Cir. 2001).
[23] *Mercer*, at 404.

2. The representation is false

A misrepresentation is fraudulent if the party knows or believes the matter is not as represented. The forgery of Leiva's signature on the bank papers constitutes a false representation. Schenck knew that the signature meant that Leiva had agreed to be bound for the payment of the credit card, which was not true.

3. Intent to deceive

The court must consider the debtor's subjective intent. Intent to deceive is present if the debtor "intends or has reason to expect [the creditor] to act or to refrain from action in reliance upon the misrepresentation."[24] "A result is intended if the actor either acts with the desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct."[25] Schenck intended to bind McKeon and Lopez, as well as himself and Leiva individually, for the repayment of the balance of the Hibernia Master Card. Although the deception occurred with Hibernia as the target, Leiva stands in the shoes of Hibernia as an assignee. In forging the signature, Schenck demonstrated that he intended for Leiva and McKeon and Lopez to be bound without Leiva's consent.

4. Reliance

The creditor has the burden of proving not only that it actually relied on the debtor's representation, but also that its reliance was justifiable.[26] Hibernia relied upon Schenck's representation that Leiva wanted the corporation and his personal assets bound when it issued

---

[24] *Mercer*, at 410.
[25] *Id.*.
[26] *Mercer*, at 411.

the Master Card. Ten years after the issuance of the credit card, Hibernia deducted the payment for the card from Leiva's personal checking account.

5. Loss

Finally, the creditor must prove it sustained a loss as a proximate result of its reliance. Hibernia withdrew $1399.00 from Leiva's personal checking account for a payment on the credit card. Additionally, Leiva paid Hibernia $10,000 as a settlement for the indebtedness on the line of credit.

Schenck's forging of Leiva's signature satisfies the requirements of *Mercer* and is consistent with fraud under Section 523(a)(2)(A).

The same analysis is applicable to the line of credit from Hibernia: Schenck forged Leiva's signature on both the promissory note and commercial security agreement for the line of credit. He represented that Leiva agreed to be bound; he knew this representation to be false; he intended for Leiva to be bound without his consent; Hibernia relied on the false representation and issued the line of credit; and Leiva has suffered economic loss as a result of the false representations.

The clearly alleged fraud under Section 523(a)(2) is not seriously challenged by Schenck.[27] A state court has already fixed the amount of damages and the bankruptcy court, which can and must find whether these damages are non-dischargeable, need not revisit the amount of this non-dischargeable debt. Schenck's misrepresentations to Hibernia satisfy the requirements for a violation of Section 523(a)(2)(A) as described in *Mercer*. Therefore, the state court judgment is non-dischargeable under Section 523(a)(2).

---

[27] Leiva filed a statement of uncontroverted fact that was not contested by Schenck

B. Section 523(a)(4)

Section 523(a)(4) exempts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny".

1. Fraud or Defalcation while acting in a fiduciary capacity

The first portion of the exemption provided for in Section 523(a)(4) is "fraud or defalcation while acting in a fiduciary capacity." The concept of fiduciary under Section 523(a)(4) is narrowly defined, and applies only to technical or express trusts, not those which the law implies from the contract.[28] Additionally, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing and without any reference to it.[29] In determining whether a particular debtor was a fiduciary, the court looks to both state and federal law.[30] While the concept of fiduciary is a question of federal law, state law is important in determining whether a trust obligation exists.[31]

Louisiana Revised Statute 12:91 defines the fiduciary duties owed by officers and directors of Louisiana corporations:

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinary prudent men would exercise under similar circumstances in like positions; however, a director or officer shall not be held personally liable to the corporation or the shareholders thereof for monetary damages unless the director or officer acted in a grossly negligent manner as defined in Subsection B of this Section, or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortuous conduct or intentional breach of his duty of loyalty….[32]

---

[28] *In re Bennett*, 989 F.2d 779, 784 (5th Cir. 1993), *citing*, *In re Angelle*, 610 F.2d 1335 (5th Cir. 1980).
[29] *In re Provenza*, 316 B.R. 177, 216-17 (Bankr. E.D. La. 2003).
[30] *Id.* at 217.
[31] *Id.*
[32] Louisiana Revised Statute 12:91.

Appellate courts in Louisiana have found that "[w]here the shareholder, but not the corporation, suffers a loss, that loss is considered a direct loss to the shareholder, and the shareholder may have a right to sue individually" under Louisiana Revised Statute 12:91.[33] In *Bryan D. Scofield, Inc. v. Susan A. Daigle, Ltd.*,[34] two former members of a law firm formed as a limited liability company successfully stated a cause of action for breach of fiduciary duty again the third former member. The court analyzed the fiduciary duty owed by members of the LLC as identical to the fiduciary duty owed by officers of a regular corporation and found that, given the language of the Revised Statutes, members/shareholders have the right to sue member managers/officers directly if the breach of fiduciary duty causes direct loss to the member/shareholder.[35]

Fraud under Section 523(a)(4) is defined the same as under Section 523(a)(2)(A).[36] Schenck's false representations to Hibernia Bank and forgeries of Leiva's signature satisfy the definition of fraud found in 523(a)(4) and 523(a)(2)(A).

Contrary to counsel for Leiva's contention that, because the judgment is non-dischargeable, it cannot be paid in a chapter 13 plan, multiple cases have held that non-dischargeable debts may be paid through a chapter 13 plan.[37] Schenck can include the judgment, whether dischargeable or not, in his chapter 13 plan and pay it over a 49-month

---

[33] *Monroe v. Baron One, LLC.,* 902 So.2d 529, 533 (La.App. 5 Cir. 4/26/05), *citing, Lawly Brooke Burns Trust [v. RKR, Inc.,* 96-1231 (La.App. 1 Cir. 3/27/92), 691 So.2d 1349], *supra* at 1353.
[34] *Bryan D. Scofield, Inc. v. Susan A. Daigle, Ltd.*, 999 So.2d 311, 314 (La.App. 3 Cir. 12/10/08).
[35] *Id*. at 315, *citing, Pittman v. Beebe*, 670 So.2d 761 (La.App. 3 Cir. 3/6/96).
[36] *In re McDaniel*, 181 B.R. 883, 887 (Bankr. S.D. Tex. 1994).
[37] As evidenced by: *In re Smith*, 286 F.3d 461 (7th Cir. 2002); *In re Francis*, 273 B.R. 87 (6th Cir. BAP 2002); *In re Keach*, 243 B.R. 851 (1st Cir. BAP 2000); *In re Ochs*, 283 B.R. 135 (Bankr. E.D. NY 2002); *In re Cavaliere*, 238 B.R. 247 (Bankr. W.D. NY 1999); *In re Kurtz*, 238 B.R. 826 (Bankr. D.N.D. 1999); *In re Barnett*; 216 B.R. 202 (Bankr. N.D. OH 1997); *In re Kazzaz*, 62 B.R. 308 (Bankr. E.D. VA 1986); *In re Britt*, 211 B.R. 74 (Bankr. M.D. FL 1997);

period. The language of Section 1328(a)[38] mandates that dischargeability is not an issue in Chapter 13 until *after completion by the debtor of all payments under the plan.*[39]

For the foregoing reasons, the court finds that the debt is non-dischargeable and that the debtor can include the judgment in his chapter 13 plan and pay it over a 49 month period. Some attorneys' fees are to be added for the creditor's filing the adversary proceeding and the motion for summary judgment. This is an amount that should be negotiated between the parties. If they cannot agree they can bring that question to the court for resolution.

Judgment for Leiva in the amount awarded by the state court will be entered in accordance with this opinion.

New Orleans, Louisiana, March 26, 2010.

*Jerry A. Brown*
U.S. Bankruptcy Judge

---

[38] **§ 1328. Discharge**
**(a)** Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of the title, except any debt -- …
**(2)** of the kind specified in section 507(a)(8)(C) or in paragraph(1)(B), (1)(C), (2), (3), (4), (5), (8) or (9) of section 523(a);…

[39] 11 U.S.C. Section 1328(a).